FILED
U.S. DISTRICT COURT
DISTRICT OF NEBRASKA

10 SEP 14 AM 8:41

OFFICE OF THE CLERK

# N THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SHANNON WILLIAMS,<br><br>    Defendant. | Case No. 8:09 CR 457<br><br>**EVIDENCE INDEX IN SUPPORT OF MOTION TO QUASH SUBPOENA AND/OR LIMIT TESTIMONY BY THIRD-PARTY WITNESS, TODD COOPER** |

Third-Party witness, Todd Cooper ("Cooper"), hereby submits the following evidence in support of his Motion to Quash Subpoena and/or Limit Testimony.

1.    Affidavit of Michael C. Cox. (Exhibit "1").

Dated this 14th day of September 2010.

                         TODD COOPER, Third-Party Witness,

                         By: *Michael C. Cox*
                         Michael C. Cox, #17588
                         KOLEY JESSEN P.C., L.L.O.
                         One Pacific Place, Suite 800
                         1125 South 103rd Street
                         Omaha, NE 68124-1079
                         (402) 390 9500
                         (402) 390 9005 (facsimile)
                         Mike.Cox@koleyjessen.com

                         Attorneys for Todd Cooper.

552795.1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was hand-delivered on this 14th day of September, 2010, to:

Robert B. Creager
1630 K Street
Lincoln, NE 68506

Maria R. Moran
Assistant United States Attorney
1620 Dodge St., #1400
Omaha, NE 68102

_____
Michael C. Cox

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:09 CR 457 |
| Plaintiff, | |
| v. | AFFIDAVIT OF |
| SHANNON WILLIAMS, | MICHAEL C. COX |
| Defendant. | |

STATE OF NEBRASKA   )
                    ) ss
COUNTY OF DOUGLAS   )

I, Michael C. Cox, being first duly sworn on oath, state and depose as follows:

1. I am an attorney with the Omaha, Nebraska, law firm of Koley Jessen P.C., L.L.O., attorneys for Third-Party Witness, Todd Cooper ("Cooper").

2. In support of Cooper's Motion to Quash Subpoena and/or Limit Testimony attached to this Affidavit are true and correct copies of the following documents:

    a. Omaha World-Herald news story dated January 10, 2010, by Todd Cooper. (Exhibit "A").

    b. Subpoena of Todd Cooper to Testify at a Hearing or Trial in a Criminal Case dated September 2, 2010. (Exhibit "B").

DATED this 13 day of September 2010.

_____
Michael C. Cox

GENERAL NOTARY - State of Nebraska
PAMELA J. STANESICK
My Comm. Exp. April 22, 2011

SUBSCRIBED AND SWORN TO before me this 13 day of September 2010.

_____
Notary Public

552800.1

EXHIBIT
"1"

Sunday, 1/10/2010

Edition: Iowa; Nebraska; Sunrise
Section: News
Page: 01A
Byline: Todd Cooper
Columnist:
Credits: WORLD-HERALD STAFF WRITER
Headline: **WORLD-HERALD EXCLUSIVE**
**His life in tatters, lawyer finds himself in role of drug buster**
**He's in hiding, but hints are seen to why he agreed to wear a wire to jail visits with kingpin.**
Cutlines:
Photographer:
Source: Staff
Notes: WORLD-HERALD EXCLUSIVE.
City:
Body Text: To his friends and former colleagues, this is the extent of Terry L. Haddock's existence today:

A voice on a speakerphone. A voice that echoes with both resolve and resignation.

In measured words, the Omaha attorney confides that he is in hiding after he wore a wire to help the U.S. government indict inmate Shannon E. Williams and 10 others in a massive marijuana conspiracy.

I realize I could lose my law license over this, his friends have recalled him saying in recent weeks. But, please, don't jump to conclusions.

Williams talked about committing crimes, about eliminating witnesses. I had to do something.

And that's it. Just as quickly as he tantalizes former colleagues, he shuts down — saying federal prosecutors have asked him not to talk about why he chose to risk his legal career, even his life, by taking on the marijuana ring and its alleged kingpin.

In a case that will hinge in large part on Haddock's credibility, here's what Haddock doesn't always divulge: His involvement in the federal investigation came after a yearlong stretch in which his personal and professional lives began to circle the drain.



EXHIBIT "A"

Law enforcement officials close to the investigation say Haddock, 52, became enthralled with a 23-year-old woman from Zimbabwe who describes herself as a former escort. His wife filed for divorce. Credit card debt mounted. He was hospitalized for health problems and later treated for mental health problems. He stopped answering his phone, meeting with clients or showing up for court.

Then the federal government came calling, offering the man who friends say "hates drugs" and "hates drama" a front-row seat to both.

Haddock began wearing a wire and smuggling a cell phone into the Douglas County Jail to witness Williams orchestrate the movement of marijuana and money from Phoenix to Omaha.

"They got the perfect guy," said an Omaha attorney, a former Haddock colleague who spoke on condition of anonymity. "You have to understand with Terry — if he concluded something was right, he was going to continue to pursue it, no matter how futile the fight.

"In his world, there's good and bad — and he was going to do good. He's just one of those guys who, rightly or wrongly, sees everything in black and white."

* * *

Scottsbluff attorney Maren Chaloupka doesn't remember the black-and-white nature of Haddock. She remembers the white.

"To me, he was a nondescript, middle-aged white guy," Chaloupka said.

Chaloupka worked with Haddock briefly in 2004 when the two attorneys jointly filed a lawsuit against the Omaha Public Schools on behalf of a student who got kicked out of Burke High School. Chaloupka eventually took over the case. She said she was floored when she recently heard of Haddock's undercover work.

"He certainly didn't strike me as the kind of guy who would take on a bona fide bad (guy)," she said. "He just seemed like a milquetoast sort of guy."

At the time of his involvement in this case, Haddock was just seven years into what had been a relatively benign legal career.

A nontraditional student, the Columbus, Neb., native graduated from the University of Nebraska at Omaha with a perfect 4.0 GPA in 1998. He then graduated from the University of Nebraska-Lincoln College of Law in 2001, received his law license in Colorado in 2002 and Nebraska in 2003, and joined the Omaha law firm of Raynor, Rensch & Pfeiffer.

At the small firm — its Web site lists fewer than 10 attorneys — Haddock handled "whatever he brought in the door," a former colleague said.

Divorces. Child custody. Immigration. Drunken driving.

Other than his filing of the lawsuit against OPS, he made news when he and a neighbor engaged in a running dispute over the neighbor's loud music and brash behavior.

He later filed a defamation lawsuit over that squabble, claiming an Omaha man's false statements caused "mental and physical harm" to him, including hospitalizations and medical expenses of more than $2,500. The case was dismissed after a couple of years.

Colleagues describe Haddock as a "bulldog" who worked hard and long for his clients.

"He was pretty persistent, pretty effective," said a longtime Omaha attorney. "He wasn't afraid to pick up the phone and get things done before it got to the courtroom."

At times, colleagues said, he worked too hard — obsessing over and appealing judges' rulings that didn't go his way.

"He would put an extraordinary amount of effort into something that should have been a tenth of the time," said another attorney who spoke on condition of anonymity. "He just wasted a lot of time on stinkers that he should have walked away from."

* * *

In 2008, Haddock did walk away.

From his wife of 30 years. From his cases. From his practice.

His pursuit, according to two law enforcement officials close to the investigation: Nyasha Muchegwa, the 23-year-old immigrant from Zimbabwe.

Haddock became enamored of the former nursing assistant who advertised herself on the Internet as an "escort," the officials said.

In an interview, Muchegwa said she met Haddock at the Nebraska Furniture Mart. He noticed her accent and asked where she was from. The two struck up a friendship, she said.

Over time, she said, Haddock provided great help to her family on immigration matters and to her on a DUI and a couple of other misdemeanors.

She said that she didn't have an affair with him — that there was "nothing sensual, nothing ungodly" about their relationship. She views him as "family, like a brother or cousin," she said.

Her account was different in a November 2008 sworn deposition about a crime she witnessed.

Prosecutor Michael Jensen — who said he was curious about Haddock's zealous representation of Muchegwa — asked about their relationship.

Jensen: "Prior to Mr. Haddock becoming your attorney, did you ever have any

relationship with him?"

Muchegwa: "No I didn't ... he's more of a friend."

Jensen: "And did you ever see Mr. Haddock on more than just a friendship basis?"

Muchegwa: "At one point, yes, I did."

Jensen: "Was that prior to him becoming your attorney?"

Muchegwa: "That was prior."

Jensen: "Has that ever happened since he's become your attorney?"

Muchegwa: "No."

Whatever the relationship, Haddock was involved in Muchegwa's world. And any time Muchegwa was in trouble, the attorney wasn't far behind.

In May 2008, she was pulled over for not having a front license plate on her car. Officers ticketed her for that and for driving under suspension. They then arrested her on a misdemeanor warrant.

But before they could book her into jail, Haddock was at her side. Haddock offered to have her talk to investigators about another crime.

Then came Oct. 5, 2008. Illinois state troopers pulled over a U-Haul speeding on Interstate 80 and discovered 329 pounds of marijuana inside.

With the driver's cooperation, agents followed the U-Haul to Omaha to try to round up others involved.

Soon, the U.S. Attorney's Office in Omaha filed a marijuana conspiracy charge against Steve Kisseberth, John Oglesby, Richard Conway and one woman: Nyasha Muchegwa.

That night, Muchegwa had gone with Conway to the SuperTarget near 132nd Street and West Maple Road. Conway got out of the car and headed toward the U-Haul. Agents then watched Muchegwa drive away and park near the Dairy Queen — facing the U-Haul.

"Based on the actions observed of Muchegwa," a federal drug agent wrote, "affiant believes that she was acting as a lookout for Conway."

Within a day, Haddock rode to Muchegwa's rescue — albeit reluctantly. On Oct. 6, 2008, Haddock told Muchegwa he wouldn't represent her unless she paid him. She told him where to find cash in her northwest Omaha apartment.

While searching for the cash, Omaha police reports say, Haddock found a gun under Muchegwa's bed and unloaded it. He found a small baggie of marijuana and flushed it

down the toilet.

Soon after, he turned over the gun to police and took Muchegwa to the U.S. Attorney's Office to tell her story. Muchegwa told prosecutors that she had just begun dating Conway and that she didn't know anything about the conspiracy or what was going on that night.

On Oct. 21, 2008, federal prosecutors dismissed charges against Muchegwa and another Omaha resident.

\* \* \*

As it turned out, that traffic stop in Illinois — and the resulting cooperation of Conway and Kisseberth — helped launch the investigation into Williams and 10 others.

And it brought Haddock into the case to briefly represent both Muchegwa and Conway.

After charges were filed, investigators say, Williams paid Haddock $8,000 to represent Conway.

It was in the course of those discussions that Williams, who was acquitted of a 1993 murder, started talking about eliminating witnesses, Haddock has told others.

Haddock told friends he had to act. Federal prosecutors won't say what led them to make the bold move of having Haddock wear a wire to record their conversations. Nor have they said whether the government is paying Haddock to work as an informant.

One thing is clear: Haddock's constant presence around Muchegwa gave investigators access to an attorney who was diligent — and increasingly desperate.

Haddock's wife had filed for divorce in July 2008. About the same time, Haddock essentially stopped meeting with clients or going to court.

In a 2008 case, Haddock put up no defense for a client accused of breaking a woman's leg by ramming her with a car. When he and the client continually failed to appear to contest the lawsuit, Sarpy County District Judge David Arterburn slapped Haddock's client with a $250,000 judgment.

Soon after, Haddock submitted an affidavit saying he was solely at fault for mishandling the case. Haddock wrote that he was hospitalized for physical issues; court documents indicate he told others he suffers from Crohn's disease and severe depression.

He wrote that his "physical and mental health continued to deteriorate throughout the summer and fall months of 2008, that he became unable to manage normal day-to-day activities," according to a judge's summary. "He states that, at some point, he stopped answering his phone, stopped opening his mail, stopped managing his files."

Haddock, who eventually left Raynor, Rensch & Pfeiffer, put it this way in his affidavit: "I withdrew from everything and everyone."

He entered into mental health treatment in February 2009.

Investigators began outfitting him with a wire a couple of months later.

Now the man who was at the center of the investigation is sure to be in the crosshairs in court. Nothing about Haddock or his credibility will go unexamined as attorneys seek to throw out more than 30 tapes of meetings between Haddock and Williams.

Haddock isn't talking to reporters.

Williams is.

In a jailhouse interview last week, Williams said he is convinced that Haddock became involved to curry favor for Muchegwa.

"He went undercover to get her out of trouble," Williams said. "I wish I had an attorney like that."

Muchegwa calls that ludicrous. She noted that her charges were dismissed in October 2008 — several months before Haddock began wearing a wire.

"There was no reason for him to do it for me — my case was already dropped," she said. "I have no idea why he did what he did.

"Only God knows."

**SEALED**

AO 89 (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
District of Nebraska

| United States of America | ) |
|---|---|
| v. | ) |
| | ) Case No. 8:09 CR 457 |
| SHANNON WILLIAMS | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To: Todd Cooper
c/o Omaha World Herald
Omaha, NE

**YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case. When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | Roman L. Hruska Courthouse 111 S 18th Plaza Omaha, NE | Courtroom No.: 6 |
|---|---|---|
| | | Date and Time: 09/14/2010 9:00 am |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:

(SEAL)

Date: 9/2/10

CLERK OF COURT

*Signature of Clerk or Deputy Clerk*

---

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* **Shannon Williams**, who requests this subpoena, are:

Robert B. Creager
1630 K Street
Lincoln, NE 68506
rcreager@acwlaw.com

*Please contact counsel as to time of your appearance as that time may change based upon the court schedule.



EXHIBIT "B"