IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:09CR457 |
| v. | |
| SHANNON WILLIAMS, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Shannon Williams's ("Williams") motions for sentence reductions pursuant to 18 U.S.C. § 3582(c)(2) and (c)(1)(A) (Filing Nos. 1652, 1653) and motion for leave to share the restricted retroactive sentencing worksheet (Filing No. 1669) created in response to those motions. The Court finds Williams has demonstrated he is entitled to relief on both motions for sentence reductions and reduces his sentence accordingly. His motion for leave to share the restricted worksheet is denied.

I.   BACKGROUND

Williams was indicted on December 16, 2009, along with co-defendants Christopher Parrott, Anthony Parrott, Joe Mark Felix, Deshawn Hernandez ("Hernandez"), Vicki Cass, Sara Jarrett ("Jarrett"), Amy Griffith, Daniel Bouquet, Yvonne Ackerly, and Jamie Ackerly (together, the "co-defendants") on marijuana-conspiracy charges (Filing No. 1). Williams was arrested that same day and remained in custody throughout the proceedings against him. On July 20, 2010, a Superseding Indictment (Filing No. 360) charged Williams with conspiring to distribute 1,000 kilograms or more of marijuana ("Count I"), in violation of 21 U.S.C. §§ 841(a)(1), and (b)(1)(A)(vii), and 846, and conspiring to launder money ("Count II"), in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h). Both the original Indictment and Superseding Indictment contained forfeiture allegations claiming Williams and his co-

defendants obtained a variety of assets, including hundreds of thousands of dollars as well as multiple vehicles and properties, "directly or indirectly as a result" of their substantial marijuana-trafficking operation. *See* 21 U.S.C. § 853.

By Fall 2010, the majority of Williams's co-defendants pleaded guilty. Williams, Hernandez, and Jarrett, proceeded to trial. The Court[1] decided numerous pretrial motions, including motions to dismiss and motions to suppress evidence and statements. Williams's counsel, Michael Tasset ("Tasset"), also filed several motions to withdraw as his attorney, as Williams debated whether to proceed *pro se*. Eventually, the Court allowed Tasset to withdraw and permitted Williams to proceed *pro se* at trial with Tasset as stand-by counsel.

Trial began on April 4, 2011, and continued for three weeks. On April 28, 2011, the jury found Williams, Hernandez, and Jarrett, guilty of both counts. His "Motion to Dismiss or Motion for New Trial" (Filing No. 852) was denied along with other miscellaneous *pro se* requests.

Williams appeared for sentencing on November 4, 2011, facing 20 years to life and up to 20 years on Counts I and II, respectively. Williams represented himself with the assistance of stand-by counsel, Donald Schense. His presentence investigation report ("PSR") explained that he was the "organizer of marijuana distribution activities involving at least 12 people" and estimated that "the quantity of marijuana attributable to [Williams was] 15,720 pounds (7,130 kilograms)." The PSR also indicated Williams made comments threatening to have multiple people, including one of his attorneys, killed. *See United States v. Williams*, 720 F.3d 674, 683 (8th Cir. 2013) (describing Williams's conversations with a government informant in which he "indicated that he intended to kill two key witnesses" in a separate case).

---

[1]The late Honorable Lyle E. Strom, then-Senior Judge of the United States District Court for the District of Nebraska. This case was reassigned on January 3, 2018, on Judge Strom's transition to inactive senior status.

Williams's lengthy history of state and federal offenses resulted in a total of 19 criminal history points, corresponding to criminal history category VI. The calculated United States Sentencing Guidelines (the "Guidelines") ranges were 30 years to life on Count I and 20 years on Count II. *See United States v. Williams*, 934 F.3d 804, 808 (8th Cir. 2019) (explaining that the Guidelines range is advisory and that the Court must consider that range and 18 U.S.C. § 3553(a) factors in fashioning a sentence).

As recommended by the United States Probation and Pretrial Services Office ("probation"), the Court sentenced Williams to 480 months on Count I and 240 months on Count II, to run concurrently, to be followed by 10 years of supervised release. Williams promptly appealed his conviction and sentence to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit affirmed his conviction and sentence on July 11, 2013, rejecting Williams's abundant *pro se* challenges to the proceedings against him. *See Williams*, 720 F.3d at 704.

In the years since, Williams has moved for collateral relief several times. His first motion under 28 U.S.C. § 2255 was timely filed on March 3, 2015 (Filing No. 1432). After the Court denied his § 2255 motion, Williams, through various methods, attempted to reopen one of his ineffective-assistance claims at least four times. The Court rejected those efforts as unauthorized successive habeas petitions. *See* 28 U.S.C. §§ 2244, 2255(h).

Williams is currently incarcerated at United States Penitentiary McCreary ("USP McCreary") in Kentucky and has served around fifteen years of his sentence. He is now 56 years-old. His projected release date is August 26, 2042.

On December 20, 2023, Williams filed two motions for sentence reductions with the assistance of counsel. First, Williams argues he is entitled to relief pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Guidelines. Amendment 782, which became effective in 2014, "reduced the Guidelines ranges applicable to most drug

trafficking offenses by lowering the Base Offense Levels assigned by the Drug Quantity Table in U.S.S.G. § 2D1.1(c)." Williams claims that he qualified for relief under Amendment 782 but, despite the applicable procedure at that time, no action was ever taken by the Federal Public Defender or the government to request a reduction on his behalf.

Second, Williams moves pursuant to § 3582(c)(1)(A)[2] to have the Court reduce his sentence to 240 months on Count I and 192 months on Count II.[3] He asserts that extraordinary and compelling circumstances warrant relief, including that (1) he "is serving an unusually long sentence" and (2) "the caregiver of [his] minor child has become incapacitated." The intervening "significant rehabilitation" Williams "has undergone in prison" also supports a reduction, he claims. Finally, Williams argues the § 3553(a) factors support the requested reduction because "he is no longer a risk to the community" and the reduced sentence "would [still] adequately reflect the seriousness of his offense."

Upon reviewing those motions, the Court ordered the government to respond (Filing No. 1657) and requested probation complete a retroactive sentencing worksheet accounting for the effect of Amendment 782. The government concedes "that Amendment 782, as applied to Williams's sentence, would reduce his Base Offense Level for Count I from a level 34 to a level 32" but still opposes relief (Filing No. 1665). The government also avers Williams has not demonstrated extraordinary and compelling circumstances that entitle him to a reduction on any other ground.

---

[2]Motions for sentence reductions under § 3582(c)(1)(A)(i) are commonly referred to as motions for "compassionate release." *See United States v. Crandall*, 25 F.4th 582, 583 (8th Cir. 2022).

[3]Williams requests the Court make this reduction before the Amendment 782 reduction for a resulting sentence of 192 months on both counts. With respect to Count II, he argues a 48-month reduction is warranted because "the goals and principles underlying" Amendment 782 "apply with equal force" to that count.

4

Williams has since asked for permission to share the restricted worksheet "with certain members of his family . . . so that they may better understand the issues relevant to his pending motions for sentence reduction." He has responded to that worksheet and the government's arguments (Filing No. 1666, 1671) and submitted supplemental authority to support his request (Filing No. 1670). The Court sees no reason for the restricted worksheet to be shared.

II.  DISCUSSION

  A.  Amendment 782

The Court usually "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Under section 3582(c)(2), however, the Court can reduce a defendant's sentence where they were "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)." In doing so, the Court must still consider any applicable § 3553(a) factors and policy statements of the United States Sentencing Commission (the "Sentencing Commission"). *Id.*

In 2014, "the Sentencing Commission adopted amendment 782 to the Guidelines" which "reduced the base offense level by two levels for most drug offenses." *Hughes v. United States*, 584 U.S. 675, 684 (2018). That amendment was made retroactive and took effect in November of that year. *Id.*

According to the retroactive worksheet completed by probation (Filing No. 1668), Amendment 782 reduces the base offense level of Count I of Williams's conviction from 34 to 32. The resulting advisory Guidelines range for Count I is therefore reduced to 324 to 405 months. Having considered Williams's request, probation's recommendation, and the § 3553(a) factors, the Court agrees Williams's sentence on Count I should be reduced by 48 months to a sentence of 432 months.

### B.   Compassionate Release[4]

The Court may also reduce Williams's sentence under section 3582(c)(1)(A)(i) upon a showing that "extraordinary and compelling reasons warrant" relief. *See also United States v. Avalos Banderas*, 39 F.4th 1059, 1062 (8th Cir. 2022) (stating the defendant "bears the burden to establish that compassionate release is warranted"). Congress left the job of defining what constitutes extraordinary and compelling grounds for compassionate relief to the Sentencing Commission. *See* 28 U.S.C. § 944(t); *United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1002 (8th Cir. 2023). Accordingly, the Sentencing Commission has outlined various circumstances that may warrant relief and others that do not. *See* U.S.S.G. § 1B1.13; *see also Concepcion v. United States*, 597 U.S. 481, 491 (2022) (explaining that the district court's discretion at sentencing extends to considerations in modifying a sentence except where "Congress or the Constitution expressly limits the type of information a district court may consider").

Under § 1B1.13(b)(3)(A) of the Guidelines, extraordinary and compelling circumstances may exist where the "caregiver of the defendant's minor child" dies or becomes incapacitated. Further, § 1B1.13(b)(6) provides that a defendant may also be eligible for compassionate release based on a non-retroactive change in law where (1) he "received an unusually long sentence," (2) he "has served at least 10 years of the term of imprisonment," and (3) that "change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed."

---

[4]Williams's motion qualifies for judicial review because the warden of USP McCreary denied his request for a reduction on November 27, 2023. *See* 18 U.S.C. § 3582(c)(1)(A) (allowing a defendant to move for compassionate release only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility"); *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021) (describing that requirement as a "mandatory claim-processing rule").

Williams proposes his circumstances fit the bill under both of these provisions. The Court is not convinced his family circumstances warrant relief at this time but agrees he has demonstrated his entitlement to some relief based on an intervening change in law pursuant to § 1B1.13(b)(6).

First, Williams argues the Court should reduce his sentence because the "mother and caregiver of [his] 16-year-old daughter" has become incapacitated due to a recent cancer diagnosis. Williams claims her condition makes it so she "cannot care for [their] child . . . alone." He also states he "is the only person that can step in at her moment of need" because, although her "mother has temporarily relocated" to help her, she will eventually "need to return home." These are surely difficult circumstances for Williams's daughter and her family but, unfortunately, they are not uncommon.

Williams makes a stronger showing that his lengthy sentence would not be imposed today based on intervening changes in law. Despite the government's somewhat-contrary assertions, the Court can consider non-retroactive changes in law in determining whether to grant relief to a defendant, albeit in limited circumstances.[5] *See* § 1B1.13(b)(6). Where the defendant cannot establish that exception applies, the general rule that a non-retroactive change in law "shall not be considered for purposes of determining whether an extraordinary and compelling reason exists" controls the Court's analysis. § 1B1.13(c); *see also United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1004 (8th Cir. 2023) (stating, before the 2023 amendments to § 1B1.13, that "non-retroactive

---

[5]The Sentencing Commission's 2023 amendments to § 1B1.13 to this point were specifically adopted to "respond to a circuit split concerning when, if ever, non-retroactive changes in law may be considered as extraordinary and compelling reasons within the meaning of section 3582(c)(1)(A)." The government's reference to the Eighth Circuit's description of those then-proposed amendments in *Rodriguez-Mendez* does little to support its assertion that Williams is not eligible for relief under § 1B1.13(b)(6). *See United States v. Henderson*, 2024 WL 881253, at *7-*8 (E.D. Mo. Feb. 23, 2024) (explaining that part of the circuit court's opinion was dicta that "while unclear, appears to contradict the plain reading of subsection (b)(6)").

change in sentencing law 'cannot contribute to a finding of extraordinary and compelling reasons for a reduction in sentence'" and briefly discussing the proposed amendment (quoting *Crandall*, 25 F.4th at 586)).

In the Court's view, Williams demonstrates his eligibility under § 1B1.13(b)(6), permitting the consideration of changes in law. To start, he has served over ten years of his sentence. Further, Williams's 40-year term of imprisonment on Count I is unusually long. To be sure, the characteristics of Williams's offenses and his substantial criminal history are serious. But, as Williams demonstrates, that sentence is lengthy even in comparison to other drug offenders who were subject to the now-defunct 20-year mandatory minimum in place at the time of his conviction. *See generally* U.S. Dep't of Just., Bureau of Just. Stat., *Sentencing Decisions for Persons in Federal Prison for Drug Offenses, 2013-2018* (2023) ("BJS Report"); U.S. Sent'g Comm'n, *Mandatory Minimum Penalties for Drug Offenses in the Federal Criminal Justice System* (2017) ("Commission Report"). [6]

Additionally, the impact of § 401 of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), and Amendment 782 demonstrates Williams's 40-year sentence is grossly disparate from the one he would likely receive today. The First Step Act reduced the mandatory minimum Williams faced from 20 years to 15 years. *See* 21 U.S.C. § 841(b)(1)(A)(vii); *see United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020) (describing the First Step Act's "monumental" changes "to sentencing calculations, mandatory minimums, good behavior credits and other parts of our criminal laws"). The Guidelines range he would currently face is also significantly reduced due to the effect of Amendment 782. If sentenced now, that range would be 324

---

[6] Only 4% of marijuana offenders received a 20-year mandatory minimum between 2013 and 2018. BJS Report at 9. Williams's sentence is twice that length. His sentence is also well above the average (300 months) and median (262 months) sentences for drug offenders subject to the 20-year minimum during that time. *Id.* at 14. Further, it dwarfs the average sentence of other leaders and managers of marijuana-trafficking conspiracies, who tend to be sentenced to less than 10 years in prison. Commission Report at 134.

to 405 months. At his sentencing more than a decade ago, Williams faced a range of 360 months to *life*.

That disparity is great. His 40-year sentence that was once well within his Guideline range is now 13 years greater than the low end of the current Guideline range and over 6 years greater than its high end. The Court believes this gross disparity is worth remedying in Williams's case. *See*, *e.g.*, *United State v. Riley*, 2023 WL 8600496, at *7 (E.D. La. Dec. 12. 2023) (concluding a "10-year difference in the sentence [the defendant] received in 2014 and the sentence he would receive today" warranted compassionate release).

Williams's efforts at rehabilitation during his incarceration further support granting him a reduction. *See* U.S.S.G. § 1B1.13(d) (explaining that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" but can be considered with other factors "in determining whether and to what extent a reduction . . . is warranted"). Though his record is not pristine, he has received few disciplinary infractions during his sentence, the most recent of which is now five years-old. He has also completed the Residential Drug Abuse Program, earned his GED, taken numerous courses, and secured post-incarceration employment with a local electrical company.

Overall, the Court finds Williams has demonstrated "extraordinary and compelling reasons" for a sentence reduction based on his unique circumstances. 18 U.S.C. § 3582(c)(1)(A)(i). In considering those circumstances as well as the § 3553(a) factors, the Court concludes a further 60-month reduction to Williams's sentence on Count I is appropriate. The resulting 372-month sentence sufficiently accounts for the changes in law relevant to Williams's sentence, his efforts at rehabilitation, and his experiences while incarcerated. It also reflects the severity of his conduct, the continued need for just punishment, and the potential risk of recidivism. His requests for further reductions to his sentence are denied at this time.

In light of all of the above considerations,

IT IS ORDERED:

1. Defendant Shannon Williams's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c) (Filing No. 1652) is granted. His sentence on Count I is reduced to 432 months.

2. Williams's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) (Filing No. 1653) is granted in part and denied in part. His sentence on Count I is further reduced to 372 months. His sentence on Count II remains 240 months.

3. Williams's Motion for Leave to Share a Restricted Document with a Non-Case Participant (Filing No. 1669) is denied.

4. A separate judgment will be entered.

Dated this 11th day of July 2024.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge