IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:09CR457 |
| v. | |
| SHANNON WILLIAMS, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on defendant Shannon Williams's ("Williams") Motion for Reconsideration (Filing No. 1676) of the Court's Memorandum and Order reducing his sentence (Filing No. 1672). *See United States v. Williams*, No. 8:09CR457, 2024 WL 3400680, at *3-*5 (D. Neb. July 11, 2024). For the reasons that follow, the Court partially grants that motion and further reduces Williams's sentence.

I.  **BACKGROUND**

   A.  **Trial and Sentencing**

In December 2009, a grand jury indicted Williams and ten co-defendants on marijuana-conspiracy charges (Filing No. 1). On July 20, 2010, a Superseding Indictment (Filing No. 360) charged Williams with conspiring to distribute 1,000 kilograms or more of marijuana ("Count I"), in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii), and 846, and conspiring to launder money ("Count II"), in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (h).

Williams and two co-defendants went to trial in April 2011. The rest of his co-defendants pleaded guilty. After a three-week trial—at which Williams represented himself with the assistance of stand-by counsel—the jury found Williams and his co-defendants guilty of both counts. Williams's convictions meant he faced 20 years to life in prison.

As he did at trial, Williams represented himself at sentencing with stand-by counsel present. The revised presentence investigation report ("PSR") prepared by the United States Probation and Pretrial Services Office ("probation") described Williams as the "organizer of marijuana distribution activities involving at least 12 people" and estimated that "the quantity of marijuana attributable to [Williams was] 15,720 pounds (7,130 kilograms)" (Filing No. 1178). Based on Williams's previous state and federal convictions, probation assigned him 17 criminal history points. He also received two additional points for having committed the offense "while under [a] criminal justice sentence," bringing his total criminal history score to 19 points.

That assessment placed Williams in criminal history category VI. Probation calculated Williams's advisory United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G") ranges to be 30 years to life on Count I and 20 years on Count II.

Among other things, Williams objected to probation's inclusion of two convictions in his criminal history calculation (Filing Nos. 916, 1146). As the parties have pointed out, the government agreed before sentencing that the contested "convictions should not be counted in terms of criminal history points and should not be used in assessing whether or not [Williams] is a career criminal" (Filing No. 1154). That left Williams with 13 criminal history points, still placing him in criminal history category VI.

On November 4, 2011, Williams appeared for sentencing. The Court[1] heard arguments and testimony on a number of Williams's remaining objections to his PSR (Filing No. 1216). As recommended by probation, the Court ultimately sentenced Williams to 480 months on Count I and 240 months on Count II, to run concurrently (Filing

---

[1] The late Honorable Lyle E. Strom, then United States District Court Judge for the District of Nebraska. This case was reassigned on January 3, 2018, on Judge Strom's transition to inactive senior status.

No. 1180). Williams was also sentenced to 10 years of supervised release to follow his term of incarceration.

Williams appealed, this time with counsel. Addressing his counsel's arguments as well as the numerous challenges Williams lodged *pro se*, the Eighth Circuit affirmed the Court's judgment and sentence. *United States v. Williams*, 720 F.3d 674, 682, 695 (8th Cir. 2013). Now fifty-seven years-old, Williams is serving his sentence at United States Penitentiary McCreary ("USP McCreary") in Kentucky. At the time these sentence-reduction proceedings began, Williams was estimated to be released in August 2042.

### B.  Motions for Sentence Reductions

As the Court explained at length in its previous Memorandum and Order (Filing No. 1672), Williams filed two motions for sentencing relief in December 2023. In one motion, Williams moved pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 to the Guidelines[2] for a 48-month reduction to his sentence on Count I (Filing No. 1652). In the other, Williams argued that extraordinary and compelling circumstances warranted relief under 18 U.S.C. § 3582(c)(1)(A), including his unfortunate family circumstances and "unusually long sentence" (Filing No. 1653). *See* U.S.S.G. § 1B1.13(b)(3), (6) (describing when such circumstances establish "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)). For those reasons and others, including his evidence of rehabilitation while in prison, Williams asserted his sentence should be further reduced to 240 months on Count I and 192 months on Count II.

On January 2, 2024, the Court ordered the government to respond to Williams's motions (Filing No. 1657). Though the government conceded Williams qualified for a

---

[2]Amendment 782 lowered the base offense levels assigned by the Guidelines' Drug Quantity Table, *see* U.S.S.G. § 2D1.1(c), thereby reducing the ranges applicable to many drug-trafficking offenses. That amendment became effective in 2014. In 2015, probation acknowledged Williams's eligibility and recommended a reduction (Filing No. 1502). Despite the Court's procedure at the time to process requests for relief for eligible defendants (Filing No. 1421), Williams slipped through the cracks.

reduction under Amendment 782, it opposed any relief (Filing No. 1665). As requested by the Court, probation completed a retroactive sentencing worksheet (Filing No. 1668) in June 2024 to demonstrate the effect of Amendment 782 on Williams's Guidelines calculations and recommended Williams's sentence on Count I be reduced by 48 months.

Williams responded to that worksheet on July 2, 2024 (Filing No. 1671). He first clarified "the nature of his disciplinary and educational" record, elaborating on the changes he has undergone in prison over the last several years. Williams also noted his PSR was never corrected to reflect his subsequently lowered criminal history calculation. Given his actual assessment of 13 criminal history points, Williams asserted that he may be eligible for further relief under the more-recent Amendment 821 to the Guidelines.

On July 11, 2024, the Court granted Williams's motion under § 3582(c)(2) and granted in part and denied in part his motion under § 3582(c)(1)(A). The Court first reduced Williams's sentence on Count I to 432 months based on his request pursuant to § 3582(c)(2), "probation's recommendation, and the § 3553(a) factors." *Williams*, 2024 WL 3400680 at *3; *see also* 18 U.S.C. § 3553(a) (setting forth factors the district court must consider in determining what sentence to impose).

With regard to Williams's motion under § 3582(c)(1)(A), the Court found Williams established extraordinary and compelling reasons for relief. The Court considered Williams's claim that the "'mother and caregiver of [his] 16 year-old daughter' ha[d] become incapacitated due to a recent cancer diagnosis" and concluded it was "not convinced" those circumstances presently warranted the requested relief. *Williams*, 2024 WL 3400680, at *4; s*ee also* U.S.S.G. § 1B1.13(b)(3)(A) (stating "[e]xtraordinary and compelling reasons exist" where "the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care" dies or becomes incapacitated). It was, however, persuaded by Williams's argument that his sentence was unusually long and "would not be imposed today based on intervening changes in law." *Williams*, 2024 WL 3400680, at *4. The Court concluded the disparity

in sentencing was great,[3] noting that Williams's "40-year sentence that was once well within his Guideline range is now 13 years greater than the low end of the current Guideline range and over 6 years greater than its high end." *Id.* at *5. In considering those circumstances and the relevant § 3553(a) factors, the Court determined "a further 60-month reduction to Williams's sentence on Count I" was warranted. *Id.* at *5; *cf. Concepcion v. United States*, 597 U.S. 481, 491 (2022) (explaining that sentencing courts retain discretion in modifying a sentence except where limited by "Congress or the Constitution").

That same day, the Court entered an amended judgment (Filing No. 1673) reducing Williams's sentence on Count I to 372 months. No reduction was granted as to his 240-month sentence on Count II. On Williams's motion (Filing No. 1674), the Court extended the deadline for him to file a notice of appeal (Filing No. 1675). *See* Fed. R. App. P. 4(b)(4).

### C. Motion for Reconsideration

Now before the Court is Williams's August 16, 2024, Motion for Reconsideration of the Court's Memorandum and Order reducing his sentence. Williams asserts the Court erred in multiple respects and requests it "enter an amended judgment further reducing his sentence on Count I to 240 months or, in the alternative, 324 months." Put briefly, he argues the Court's Memorandum and Order (1) "does not accurately reflect his true criminal history score," (2) incorrectly denied his sentence reduction because his family circumstances were not uncommon, and (3) erroneously referred to "unproven facts" from Williams's PSR accusing him of threatening to kill multiple people. Williams explains that the Court's oversight regarding his criminal history score led to its failure to credit him for changes brought about by Amendment 821.

---

[3]The Court was especially compelled by the fact that the mandatory minimum of the offense in Count I had since been reduced to 15 years and that Williams's Guidelines range would have been 324 to 405 months if sentenced at the time of its decision. *See Williams*, 2024 WL 3400680, at *5.

The government responded to Williams's motion (Filing No. 1681) on September 10, 2024, as ordered by the Court (Filing No. 1678). All told, the government contends Williams has not shown the Court's Memorandum and Order suffers from "manifest errors of law or fact" justifying reconsideration. *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). The government concedes, however, that Williams's PSR inaccurately reflects the criminal history calculation considered at sentencing and that he is eligible for a reduction under Amendment 821. Still, it opposes any additional reduction to Williams's sentence and takes issue with his failure to "amend his motions[] or file a separate motion" to seek relief pursuant to Amendment 821.[4]

Williams replied in support of his motion (Filing No. 1684) on September 18, 2024. On October 3, 2024, the Court ordered probation to complete and submit a "restricted retroactive sentencing worksheet demonstrating the effect of Amendment 821" in Williams's case and gave the parties ten days from the filing of the worksheet to file any response (Filing No. 1685). *United States v. Williams*, No. 8:09CR457, 2024 WL 4391862, at *1 (D. Neb. Oct. 3, 2024). It also acknowledged it "erred in stating Williams received 'a total of 19 criminal history points' based on his [PSR] and failing to clarify" the subsequent reduction of that calculation. *Id.* at *1 (quoting *Williams*, 2024 WL 3400680, at *2).

Probation submitted its "2023 Amendment 821 Retroactive Sentencing Worksheet" (Filing No. 1686) on November 27, 2024, demonstrating the retroactive reduction to Williams's criminal history level and Guidelines range. On December 6, 2024, Williams

---

[4]Requiring Williams to file another motion at this point would not serve any important interests given that the matter is already before the Court on his motion for reconsideration and fully briefed by the parties. *Cf. BBCA, Inc. v. United States*, 954 F.2d 1429, 1431-32 (8th Cir. 1992) (explaining "the substance of a motion" to reconsider "rather than [its] form . . . is controlling"); Fed. R. Crim. P. 2 (stating courts should interpret federal criminal rules "to eliminate unjustifiable expense and delay").

responded (Filing No. 1687), asserting he should receive the greatest possible reduction under Amendment 821. That would bring his sentence on Count I to 292 months, the lowest end of his current Guidelines range. His motion is now ripe for review.

## II.   DISCUSSION

### A.   Standard of Review

The Federal Rules of Criminal Procedure do not explicitly authorize "a generic motion to reconsider." *United States v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010); *see also United States v. Warren*, 22 F.4th 917, 922 (10th Cir. 2022). That said, the propriety of motions to reconsider in criminal matters is well-established. *See*, *e.g.*, *United States v. Luger*, 837 F.3d 870, 875-76 (8th Cir. 2016) (discussing arguments as to what standards should apply to such motions); *United States v. Ridl*, 26 F.3d 73, 74 (8th Cir. 1994) (stating "[a] timely request for rehearing or reconsideration tolls the running of the time for filing an appeal in a criminal case" under Federal Rule of Appellate Procedure 4(b)). Whether to grant such motions is within the Court's discretion. *See Luger*, 837 F.3d at 875.

In the civil context, "a motion for reconsideration 'serves the limited function of correcting manifest errors of law or fact or . . . presenting newly discovered evidence.'" *Id.* (quoting *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 407 (8th Cir. 2013)). Generally, such motions are not permitted "as a vehicle to present evidence that was available when the matter was initially adjudicated." *Id.* While the Eighth Circuit has yet to come to such a determination, some of its sister circuits have concluded those civil standards also apply to motions to reconsider in the criminal context. *See id.* at 876 (considering but ultimately refusing to decide whether the civil standard should apply to motions for reconsideration in a criminal case); *Rollins*, 607 F.3d at 502 (stating such motions "will be treated just like motions in civil suits"); *Warren*, 22 F.4th at 927 (explaining the Tenth Circuit "has imported the standard from Federal Rule of Civil Procedure 60(b)" to such motions).

**B.     Analysis**

Having carefully considered the extensive record in this case and the parties' arguments, the Court finds some of its earlier decision warrants reconsideration. As previously acknowledged, the Court erred in failing to clarify that Williams received a criminal history score of 13 points at sentencing instead of the 19 originally calculated by probation in his PSR. Both parties agree that makes him eligible for another reduction to his sentence pursuant to Amendment 821 and § 3582(c)(2).

As discussed below, the Court finds such a reduction is appropriate under § 3582(c)(2) and further necessary to more accurately account for the gross sentencing disparity that justified the original reduction to his sentence under § 3582(c)(1)(A). On the other hand, Williams's other claimed errors raise some interesting questions about the proper scope of the Court's analysis but, ultimately, do not warrant any relief.

**1.     Family Circumstances**

First, Williams's concern the Court mishandled his claim for relief based on his family circumstances is unfounded. Williams reads the Court's decision to have "accept[ed] [his] factual claims" that the mother of his minor daughter is incapacitated but, nevertheless, determined that unfortunate situation did not constitute "extraordinary and compelling reasons" for relief on the basis that "such circumstances are 'not uncommon.'" He contends that reasoning would be improper as the Court would have had to either deviate from the definition set out in § 1B1.13(b)(3)(A) or the § 3553(a) factors. With respect to the latter, Williams argues that the Court "erred by failing to grant a reduction under § 1B1.13(b)(3)(A)" because it "faithfully applied the § 3553(a) factors" and determined they supported a sentence reduction based on his unusually long sentence.

The Court is not convinced its decision-making in § 3582(c)(1)(A) matters is as constrained as Williams makes it out to be. Though the caselaw leaves many open questions about how the Court should analyze compassionate-release requests, it is clear sentencing courts have considerable discretion and receive great deference in deciding

8

whether to grant such relief. *See Concepcion*, 597 U.S. at 494-502 (discussing the district court's "broad discretion" under the First Step Act "to consider any relevant" information and "dismiss arguments that it does not find compelling"); *cf. Dillon v. United States*, 560 U.S. 817, 827 (2010) (explaining that, in ruling on § 3582(c)(2) motions, the district court first determines whether a defendant is eligible for a reduction and then decides "whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case"). At this time, it is not even entirely apparent whether § 1B1.13 is binding or merely "advisory" in deciding whether a defendant has demonstrated "extraordinary and compelling reasons" for relief. *United States v. Marcussen*, 15 F.4th 855, 859 (8th Cir. 2021) (concluding the policy statement was "advisory . . . but not binding"); *see also United States v. Crandall*, 25 F.4th 582, 584 (8th Cir. 2022) (stating § 3582(c)(1)(A) "makes consistency with an applicable policy statement a *mandatory* condition for a reduction" and discussing the open question at that time whether § 1B1.13 was applicable at all to defendant's motions under the First Step Act); *United States v. Davis*, 99 F.4th 647, 654-55 (4th Cir. 2024) (explaining § 1B1.13(b) was made explicitly applicable to such motions in May 2023 and that the district courts "enjoy [] discretion" in weighing factors relevant to whether a defendant has established "extraordinary and compelling reasons").

Either way, the Court is confident that it gave adequate consideration to Williams's family circumstances. The Court was not persuaded those circumstances weighed heavily in favor of the requested reduction but duly accounted for them in reducing Williams's sentence, including in weighing his "history and characteristics." 18 U.S.C. § 3553(a). Williams's motion to reconsider and further reduce his sentence is therefore denied on this basis.

### 2. Claims of Violent Threats

Second, Williams asserts the Court erred to the extent it relied on the accusations that he "supposedly threatened to kill his attorney and two witnesses in another case." The allegations at issue appear in Williams's PSR and were referenced, in part, by the Eighth

Circuit on appeal. *See Williams*, 720 F.3d at 683. Williams avers it would have been an error for the Court to base its compassionate-release determination on these allegations because, in his view, they are incorrect, unproven, uncorroborated, and heavily contested.

In paragraphs 53 and 89 of Williams's revised PSR, probation described the government's evidence that Williams made statements to have multiple people killed. Williams objected to those statements in an earlier version of his PSR "and denie[d] making threats of any kind to any person" (Filing No. 916). *See United States v. Berrier*, 28 F.4th 883, 887 (8th Cir. 2022) ("When the defendant objects to fact allegations in the PSR . . . 'the court must either make findings by a preponderance of the evidence or disregard those facts.'" (quoting *United States v. Webster*, 788 F.3d 891, 892 (8th Cir. 2015))). That objection was seemingly unresolved at the time of sentencing. In an Addendum to Williams's revised PSR (Filing No. 1178, p. 36), probation described that "remaining objection[]," stating that "information was not used to increase [his] offense level" but opining it could be considered by the Court in determining an appropriate sentence "within the [advisory] [G]uideline imprisonment range." *See* 18 U.S.C. § 3553(a).

Based on its thorough review of the extensive—albeit somewhat murky—record in this case, the Court generally agrees with Williams that the original sentencing judge did not appear to directly address those allegations at sentencing. Nor does it appear that the Court explicitly discussed Williams's related objection at that time.[5] *See United States v. Conrad*, 74 F.4th 957, 959 (8th Cir. 2023) (explaining a district court "is not required to resolve every disputed issue" in a PSR but must "either [] resolve disputes or [] determine that a ruling is unnecessary"). And while the Court expressed its belief at sentencing that Williams "pose[d] a severe threat [] to the safety and health of the public" based on his

---

[5]To be sure, the government briefly raised these allegations in arguing Williams had "a violent side to him" (Filing No. 1216, p. 55). But no extended discussion or questioning regarding these accusations took place at the sentencing hearing.

offense conduct, nothing in the record indicates the Court gave any weight to the objected-to allegations now at issue.

Similarly, those allegations did not impact this Court's decision in reducing Williams's sentence. The Court's recent Memorandum and Order merely referred to the fact that Williams's PSR included those accusations. *See Williams*, 2024 WL 3400680, at *1. While the Court considered Williams's history and characteristics and the seriousness of his offense, it did not give any weight to the allegations of such threats. *See* 18 U.S.C. § 3553(a). Therefore, Williams's argument does not justify any further relief.

### 3.     Amendment 821

Finally, Williams asserts the Court's failure to account for his corrected criminal history calculation prevented him "from obtaining a further sentence reduction for which he would otherwise be eligible" based on Amendment 821. "By its terms, Amendment 821 applies retroactively and alters how so-called 'status points' are used to calculate a defendant's criminal history category." *United States v. Bonds*, 121 F.4th 1129, 1130 (7th Cir. 2024). Such "status points" refer to the "criminal history points [added] when the offense of conviction was committed by the defendant while under any criminal justice sentence," including supervised release. *United States v. Clayborn*, 88 F.4th 1126, 1128 (7th Cir. 2023); *see also* U.S.S.G. § 4A1.1(e).

Under the pre-amendment provisions, "two criminal history points were added . . . if the defendant committed the instant offense" under any criminal justice sentence. U.S. Sent'g Guidelines Manual Supp. to App. C, Amend. 821 (U.S. Sent'g Comm'n 2024). As amended, § 4A1.1(e) provides that only one point will be added for defendants with "7 or more" criminal history points, and none for those with lesser criminal histories. As his PSR reflects, Williams received two additional "status points" because he "commenced the instant offense while placed at" a halfway house as "part of a custodial term of incarceration," and "continued to commit the instant offense during a term of supervised release."

11

The text of § 4A1.1(e) and probation's worksheet make clear Williams should now only receive one status point for those circumstances underlying his offense. That reduction results in a total of 12 criminal history points instead of the 13 Williams received at sentencing. Importantly, it also lowers Williams's criminal history category from VI to V. As a result of those retroactive changes to Williams's criminal history computation, his new advisory Guidelines range is 292 months to 365 months. Thus, probation reports—and the government concedes—"Williams is eligible for an 80-month reduction" to his sentence on Count I.

Armed with that revised calculation, Williams requests the Court reconsider its decision and—at least—grant him the 80-month reduction for which he is eligible under Amendment 821 and § 3582(c)(2). The government maintains his "current amended sentence of 372 months . . . should not be reduced further" despite his eligibility for relief.

Overall, Williams's arguments are well-taken. The Court's analysis regarding the "gross disparity" between his original 40-year sentence and "the one he would likely receive today" was based in large part on what it viewed as the intervening "changes in law" affecting his current Guidelines range. *Williams*, 2024 WL 3400680, at *5. But the Court did not properly account for the reduction resulting from Amendment 821. And it agrees with Williams that it should.

Extending the reasoning behind the Court's original reduction under § 3582(c)(1)(A)—including the balance of the § 3553(a) factors—the Court finds an additional 37-month reduction to Williams's sentence is appropriate. That reduction results in a 335-month sentence on Count I, which is not only proportionate to the 372-month sentence previously imposed but is also sufficient, but not greater than necessary, in light of the specific circumstances of Williams's case. In particular, the Court believes that sentence continues to satisfy the important sentencing goals in § 3553(a) to (A) "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense"; (B) "afford adequate deterrence to criminal conduct"; (C)

"protect the public"; and (D) "provide the defendant with needed" training, care, or treatment.

In light of those considerations and the reasons stated in the Court's earlier decision,

IT IS ORDERED:

1. Defendant Shannon Williams's Motion for Reconsideration (Filing No. 1676) of the Court's Memorandum and Order reducing his sentence (Filing No. 1672) is granted in part and denied in part as set forth in this Memorandum and Order.
2. Pursuant to 18 U.S.C. § 3582(c)(1)(A) and (2), Williams's sentence on Count I is reduced to 335 months imprisonment.
3. A separate judgment will be entered.

Dated this 23rd day of January 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge